**Neida SANTIAGO et al., Plaintiffs,**

v.

**CITY OF PHILADELPHIA et al., Defendants.**

**Civ. A. No. 74–2589.**

United States District Court, E. D. Pennsylvania.

July 20, 1977.

Jonathan M. Stein, Jack J. Levine, Alex J. Palamarchuk, Ellen Josephson, Janet F. Stotland, Philadelphia, Pa., for plaintiffs.

Joseph R. Lally, Agostino Cammisa, Alan H. Gilbert, M. Faith Angell, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This civil rights action is brought by juvenile-residents of the Youth Study Center ("YSC"), Philadelphia, Pennsylvania, who challenge the conditions of confinement and treatment at YSC and seek injunctive and declaratory relief and damages. In a previous opinion, *Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D.Pa.1976) [hereinafter *Santiago I*], we granted plaintiffs' motion for class action certification as it applies to injunctive and declaratory relief.[1] Defendants have moved to dismiss the action on several grounds. We will grant their motion in part and deny it in part.

Plaintiffs' allegations of constitutional deprivations and state statutory violations can be divided into six categories: (1) unconstitutional corporal punishment and solitary confinement; (2) general institutional conditions which violate constitutional and statutory standards (*e. g.*, inadequate living space, heating, lighting); (3) improper institutional restraints and suppression of liberties (*e. g.*, limitations concerning mail, visitation, recreation, clothing and medical care); (4) denial of adequate educational and rehabilitative services; (5) racial segregation at YSC resulting from discriminatory placement of juveniles; and (6) failure to utilize the least restrictive alternative in

---

1. In *Santiago I* we approved the following class and two subclasses:

All juvenile citizens who are or will become subject to incarceration at YSC; and
 (a) All non-white juvenile citizens who are or will become subject to incarceration at YSC; and

 (b) All non-adjudicated delinquent juvenile citizens who are or will become subject to incarceration at YSC.

As to plaintiffs' class action claim for damages, we deferred a ruling on the appropriateness of certification. Individual damage claims by the named plaintiffs still remain in the case.

confining juveniles. Plaintiffs maintain these practices are actionable under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, 1994 and 2000d; the first, fourth, fifth, eighth, thirteenth and fourteenth amendments of the United States Constitution; and the statutory and common law of the Commonwealth of Pennsylvania.

Named as defendants are: the City of Philadelphia, Mayor Frank Rizzo, Hillel Levinson (Managing Director of Philadelphia), judges of the Family Court Division of the Philadelphia Court of Common Pleas, administrators and personnel of YSC, the Philadelphia School District and officials of both the Philadelphia School District and Pennsylvania State Department of Education. Defendants are sued for overt acts committed in furtherance of the aforementioned practices and/or their acquiescence in and toleration of the same. In addition, liability for some defendants has been based upon a *respondeat superior* theory.

The defendants'[2] motion to dismiss alleges that: (a) the complaint fails to meet the requirements of case or controversy; (b) this court should abstain from a decision on the merits; (c) the Family Court judges and Judge Montemuro are immune from suit; (d) certain defendants should be granted "quasi-judicial" immunity; (e) the City of Philadelphia is immune; (f) *respondeat superior* is not applicable to any defendant; (g) plaintiffs have not alleged facts which could constitute a violation of the eighth amendment; (h) the complaint fails to state a cause of action under 42 U.S.C. §§ 1983, 1985(3), 1986, 1994 and 2000d against all and/or some of the defendants; (i) plaintiffs have no right of privacy; and (j) this court should not exercise pendent jurisdiction over the state law claims. We will deal with each of these arguments *seriatim*.

## I. CASE OR CONTROVERSY:

■ Defendants claim that this action fails to meet the requirements of the case or controversy clause of Article III because plaintiffs have not alleged any "real and immediate" injury and thus lack the requisite "personal stake in the outcome." *Rizzo v. Goode*, 423 U.S. 362, 372, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 493–94, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Defendants argue that it is speculative to assume that the named plaintiffs will again be subjected to the conditions at YSC of which they complain and that the allegations of past wrongs are insufficient to raise the prospect of future harm which is needed to justify a claim for injunctive relief.[3] We reject this argument.

Defendants' objection is based upon the Court's analysis in *O'Shea* and *Goode*. In *O'Shea* the Court concluded that allegations concerning practices of racially discriminatory bond setting, sentencing and assessing of fees did not meet the requirements of Article III because the complaint lacked allegations of specific instances of such abuse by defendants and there was no support for the assertion that there were "continuing, present adverse effects" upon plaintiffs. *O'Shea, supra*, 414 U.S. at 496, 94 S.Ct. 669. The Court held that before the named plaintiffs could seek relief for a class, they must establish the requisite case or controversy with the defendants.

In *Goode* the plaintiffs claimed that there was a pervasive pattern of illegal and unconstitutional mistreatment of citizens of Philadelphia by police officers. The plaintiffs only sued supervisory officials of the City, including the Mayor, City Managing Director, Police Commissioner and two police officials, and sought injunctive relief against these officials in the form of, *inter alia*, a disciplinary program to discourage police misconduct. The proof at trial failed to establish either a pervasive pattern of

---

**2.** The motion to dismiss has been submitted on behalf of all defendants except the Philadelphia School District and officials of the Philadelphia School District and Pennsylvania State Department of Education and therefore these defendants are not considered in any of the analysis of the grounds for dismissal. The term "de-

fendants" is used to refer to those represented in the motion to dismiss.

**3.** In *Santiago I* we rejected defendants' claim that this action is moot because the named plaintiffs no longer reside at YSC.

misconduct by the police or an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [defendants]—express or otherwise—showing their authorization or approval of such misconduct." *Goode, supra,* 423 U.S. at 371, 96 S.Ct. at 604.

The Court concluded that plaintiffs did not demonstrate a case or controversy between themselves and defendants because plaintiffs' claim to injury "rests not upon what the named [defendants] might do to them in the future . . . but upon what one of a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception of departmental disciplinary procedures." *Id.* at 372, 96 S.Ct. at 605.

The facts alleged in this action are significantly different from those described in *O'Shea* and *Goode.* We find that there is a case or controversy between the named plaintiffs and defendants. Each named plaintiff allegedly has suffered an injury due to the conditions at YSC or conduct by YSC personnel. In particular, numerous incidents of allegedly excessive use of corporal punishment and solitary confinement are described in the complaint. The supervisory defendants (e. g., Mayor, City Managing Director, YSC Board of Managers) are linked to these conditions at YSC and misconduct by YSC employees because the complaint avers that this mistreatment is a direct consequence of policies and practices which have been authorized or acquiesced in by these defendants. This nexus is supported by the statutory duty these defendants have to maintain and supervise the facility. We conclude that the complaint demonstrates both injury to the named plaintiffs and defendants' connection to those injuries.

■ Concerning the prospect of future harm, defendants incorrectly posit the question in terms of the likelihood of the named plaintiffs' being confined again at YSC. Rather, the issue is whether the plaintiffs' class, consisting of current and future YSC residents, is likely to suffer injury due to defendants' conduct. The complaint alleges that the conditions of confinement and treatment at YSC, which apply to all YSC residents, violate the eighth amendment. Defendants have not demonstrated that these conditions have substantially changed since the complaint was filed, and thus if violations are proven, future residents will likely suffer injuries similar to those allegedly inflicted on the named plaintiffs. The supervisory defendants are sufficiently linked to these conditions and practices because they are administratively responsible for the maintenance of YSC and allegedly have initiated or acquiesced in policies and practices which have resulted in constitutional violations.

## II. ABSTENTION:

■ Defendants suggest that we should abstain from deciding the issues involved in the suit. Without pointing to an explicit legal theory of abstention, defendants emphasize that the juvenile justice system is one "fraught with local concern" and "permeated by state law." We agree but conclude that these factors are insufficient to justify federal court abstention when federal constitutional rights are involved.

■ Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), *quoting from, County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). There are three defined areas where abstention is appropriate. The first is *Pullman* abstention. This theory requires a federal court to defer a decision in a case where a federal constitutional issue is raised which is premised on an unsettled question of state law and which may be mooted or avoided by a resolution of the state law issue. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 500–01, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In this action there is no *unclear* question of state law.

■ The second circumstance where abstention is appropriate is "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States, supra,* 424 U.S. at 814, 96 S.Ct. at 1244; *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). This type of abstention is only applicable when there is an extended state regulatory system or body of law that would be substantially disturbed by the resolution of a federal case. State law is not the primary question in this action. Additionally, the challenge raised by plaintiffs is neither insignificant nor disruptive of otherwise valid components of the juvenile justice system of Pennsylvania. If constitutional violations are found, the conditions at YSC must be altered to conform to constitutional proscriptions.

The third category which must be considered is *Younger* equitable restraint. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court held that a federal court could not intervene in a pending state criminal proceeding absent a showing of bad faith or harassment by the officials responsible for the prosecution or a patently invalid state statute. *Younger* is premised upon notions of comity and the rule that equity ordinarily should not enjoin the prosecution of a crime. The *Younger* principle has been applied by the Court in three cases involving state civil proceedings. *Trainor v. Hernandez,* —— U.S. ——, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In each decision the Court carefully noted that it was not holding that the *Younger* doctrine applied to all civil litigation. Rather the Court has mandated *Younger* equitable restraint only in cases where the federal plaintiffs have attempted to invalidate a state statute and thereby enjoin a pending state civil proceeding which was initiated by the state against these individuals and was intended to enforce or vindicate an important state policy. *Trainor v. Hernandez,* —— U.S. at ——, 97 S.Ct. 1911. In our case there is no pending state proceeding initiated by the state which could be disrupted by federal adjudication of this action. Therefore, we conclude that the *Younger* doctrine does not bar our consideration of plaintiffs' challenge of the conditions of confinement and treatment at YSC.

■ The principles underlying the *Younger* doctrine do have application to one claim in this suit. It would appear that a component of plaintiffs' allegation of racial segregation is that the Family Court judges have discriminated in determining the disposition for juveniles adjudicated to be delinquent. 11 P.S. § 50–320. We believe that federal intervention in this decision would be inappropriate.

In *O'Shea v. Littleton, supra,* 414 U.S. at 500–01, 94 S.Ct. 669, the Court held that federal equitable relief was not available in a suit claiming racial discrimination in the sentencing of black offenders by Illinois judges. The Court concluded that the enforcement of a federal decision in such an action would entail "continuous supervision by the federal court over the conduct of the [judges] in the course of future criminal trial proceedings involving any of the members of the . . . broadly defined class." *Id.* at 501, 94 S.Ct. at 679. This, the Court determined, would violate established principles of comity as expressed in *Younger. See also Bonner v. Circuit Court of the City of St. Louis,* 526 F.2d 1331, 1335–37 (8th Cir. 1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353, *reh. denied,* 425 U.S. 926, 96 S.Ct. 1525, 47 L.Ed.2d 773 (1976); *Wallace v. Kern,* 520 F.2d 400, 404–08 (2d Cir. 1975), *cert. denied,* 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976); *Gardner v. Luckey,* 500 F.2d 712, 715 (5th Cir. 1974), *cert. denied,* 423 U.S. 841, 96 S.Ct. 73, 46 L.Ed.2d 61 (1975).

We conclude that the principle stated in *O'Shea* requires this court to refrain from reviewing the decisional process of Family Court judges used in placing juveniles at

YSC following a dispositional hearing. However, we conclude that the *O'Shea* doctrine is limited to the judicial process and that plaintiffs, therefore, may challenge the criteria used to send juveniles to YSC where such confinement is not the result of a judicial proceeding. Similarly, if there are institutional policies or practices at YSC which have resulted in racial segregation, these practices may be challenged.

## III. IMMUNITY OF FAMILY COURT JUDGES:

Defendants seek to have the complaint dismissed against all Family Court judges and Judge Frank Montemuro on the ground that judges are immune from suit, regardless of the relief sought. We reject this argument.

The Supreme Court clearly held in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), that state judges are immune from suits seeking damages under 42 U.S.C. § 1983 for actions done in the performance of their judicial functions. Since plaintiffs do not request damages against the judges, this is not an issue in this action. However, there are two limitations placed upon judicial immunity which require us to reject the immunity claim of these defendants.

■ First, we hold that state judges are not immune from suits seeking injunctive and declaratory relief. Although the Third Circuit has not ruled upon this question, *Conover v. Montemuro,* 477 F.2d 1073, 1093 (3d Cir. 1973) (en banc), the majority of courts which have explicitly considered the issue have held that no immunity exists. See *Boyd v. Adams,* 513 F.2d 83, 86–87 (7th Cir. 1975); *Fowler v. Alexander,* 478 F.2d 694, 696 (4th Cir. 1973); *Erdmann v. Stevens,* 458 F.2d 1205, 1208 (2nd Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972); *United States v. McLeod,* 385 F.2d 734, 738 n. 3 (5th Cir. 1967). We are convinced by these decisions and Judge Gibbons' well-reasoned concurrence in *Conover, supra* at 1096–1104, that the principles concerning judicial immunity analyzed in *Pierson v. Ray, supra,* do not apply to equitable relief.

■ Accepting as true plaintiffs' allegation that the judges of the Family Court in Philadelphia, and particularly Judge Montemuro as Administrative Judge, have some authority over the operation of YSC pursuant to Pa.Const.Sched. Art. 5 §§ 16(c) and (q)(ii), 11 P.S. § 442 and 17 P.S. §§ 700 and 705, they can be enjoined by a federal court from continuing the allegedly unconstitutional conditions at YSC.

■ The second exception to the doctrine of judicial immunity is that judges are not immune for their non-judicial activities, *i. e.,* activities which are ministerial or administrative in nature. *Lynch v. Johnson,* 420 F.2d 818, 820 (6th Cir. 1970); *Doe v. County of Lake, Indiana,* 399 F.Supp. 553 (N.D.Ind.1975). In *County of Lake* the court was faced with a suit nearly identical to this action. The plaintiffs there had challenged the adequacy of a juvenile detention center and the quality of treatment received while confined. The court held that the defendant-judges had administrative responsibilities concerning the facility and its residents. The court concluded that the judges were not immune from suit because their activities were not judicial, and any remedy implemented would "in no way impair, interfere or otherwise affect the discretion required by these defendants in making case-by-case decision on the merits of individual juvenile situations." *Id.* at 557–58.

■ The activities of Judge Montemuro and other Family Court judges concerning the operation of YSC are not judicial in that these defendants have only general jurisdiction over the detention center, 17 P.S. § 700, and must appoint the Board of Managers. Judge Montemuro allegedly has other administrative responsibility concerning programs at YSC. We conclude that these functions are not of the type for which judicial immunity is required.

## IV. QUASI–JUDICIAL IMMUNITY OF THE EXECUTIVE DIRECTOR AND BOARD OF MANAGERS:

■ The members of the Board of Managers and Executive Director of YSC seek

immunity from suit on the theory of absolute "quasi-judicial" immunity. As the Supreme Court recently reiterated in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors given absolute immunity), governmental officials may be afforded absolute immunity for functions which are a part of, or related to, the judicial process. On the other hand, not all supervisory officials are absolutely immune. In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Court rejected a claim of absolute immunity for school board officials, even for activities which could be characterized as adjudicatory in nature. Instead, the Court permitted only a good faith defense. We believe that the extension of an absolute immunity to governmental officials other than judges is narrow and does not include officials performing the functions of these defendants.

It is beyond question that prison officials are subject to civil suit pursuant to 42 U.S.C. § 1983. The management of YSC, like prison administration, does not involve the adjudicatory process associated with a juvenile delinquency proceeding. The YSC Board of Managers and Executive Director are responsible for determining the conditions of confinement and the care which will be provided to YSC residents. Such decisions can only be characterized as administrative.

In *Thompson v. Montemuro,* 383 F.Supp. 1200, 1206–07 (E.D.Pa.1974), a claim of absolute immunity for YSC officials was rejected. We concur with the *Thompson* decision and hold that these defendants are not sufficiently involved in the judicial process of the Family Court to warrant an absolute immunity for their conduct.

To the extent that these defendants are attempting to raise the qualified immunity extended to other public officials by *Wood v. Strickland, supra,* we find that we cannot rule upon that issue. At this stage of the proceedings there is insufficient evidence in the record to determine the merits of defendants' good faith defense. *Imbler v. Pachtman, supra,* 424 U.S. at 419, 96 S.Ct. 984 n. 13; *Fidtler v. Rundle,* 497 F.2d 794, 801 (3d Cir. 1974).

## V. IMMUNITY OF THE CITY OF PHILADELPHIA:

It is clear that the City of Philadelphia cannot be sued under 42 U.S.C. § 1983 because it is not a "person" within the meaning of that statute. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, jurisdiction is alleged pursuant to 28 U.S.C. § 1331 since the amount in controversy is alleged to be in excess of ten thousand dollars ($10,000), and plaintiffs assert a claim against the City directly under the fourteenth amendment.

Several courts in this district have held that there can be a cause of action against the City via the fourteenth amendment under 28 U.S.C. § 1331. *See, e. g., Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809 (E.D.Pa.1977) (Higginbotham, J.); *Santore v. City of Philadelphia,* C.A. No. 76–904 (E.D.Pa. September 28, 1976) (Newcomer, J.); *Rice v. City of Philadelphia,* C.A. No. 73–895 (E.D.Pa. January 21, 1976) (Fullam, J.); *Maybanks v. Ingraham,* 378 F.Supp. 913 (E.D.Pa.1974) (Lord, C. J.). But other courts in the district have rejected this claim. *See, e. g., Jones v. McElroy,* 429 F.Supp. 848 (E.D.Pa.1977) (Luongo, J.); *Crosley v. Davis,* 426 F.Supp. 389 (E.D.Pa. 1977) (Becker, J.); *Pitrone v. Mercadante,* 420 F.Supp. 1384 (E.D.Pa.1976) (Ditter, J.).

We concur with the analysis of Judge Higginbotham in *Drennon v. Philadelphia General Hospital, supra,* and therefore reaffirm our holding in *Maybanks v. Ingraham, supra,* that a cause of action directly under the fourteenth amendment can exist against a governmental entity. Given the extensive discussion of this issue by other district court opinions and the pendency of a Third Circuit decision on this subject, we believe further elaboration at this time would not be useful. We therefore will deny the City's motion without prejudice.

## VI. RESPONDEAT SUPERIOR:

Plaintiffs have sought to impose liability upon several of the defendants not only for

their direct or indirect participation in the alleged constitutional deprivations, but also based upon a theory of *respondeat superior.* Defendants challenge this theory of liability arguing that *respondeat superior* is never available in a § 1983 claim. We agree with defendants that city and state officials, including the Mayor, City Managing Director, judges of the Family Court, members of the Board of Managers, and Executive Director of YSC cannot be held vicariously liable for acts of subordinates; but we conclude that *respondeat superior* can be applied to the City of Philadelphia in a direct cause of action under the fourteenth amendment.

### A. 42 U.S.C. § 1983

The viability of *respondeat superior* in civil rights litigation has a confused and often misunderstood evolution. The apparent majority position is that vicarious liability has no place in a 42 U.S.C. § 1983 action. *See, e. g., Johnson v. Glick,* 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Jennings v. Davis,* 476 F.2d 1271, 1274–75 (8th Cir. 1973); *Adams v. Pate,* 445 F.2d 105, 107 n. 2 (7th Cir. 1971). However, careful scrutiny of these cases reveals that the plaintiffs were attempting to impose vicarious liability against supervisory officials for acts by their subordinates. As several courts have recognized, this is inappropriate because supervisors and their subordinates are fellow servants of the same master-employer (e. g., the City) and thus the master-servant relationship, a prerequisite for vicarious liability, is lacking between these individuals. *Goode v. Rizzo,* 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Jennings v. Davis, supra* at 1275; *Carter v. Carlson,* 144 U.S. App.D.C. 388, 447 F.2d 358, 370 n. 39 (1971), *rev'd on other grounds sub nom., District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Delaney v. Dias,* 415 F.Supp. 1351, 1354–55 (D.Mass.1976).

Subsequent decisions have erroneously cited these earlier opinions for the broader proposition that *respondeat superior* is nev-

er available in a § 1983 action, seemingly because of something inherent, albeit invisible, in § 1983 itself. The cases so holding uniformly do so without any reasoning to support their conclusion. We disagree with this latter approach. We hold that the supervisory officials named as defendants here cannot be held viciously liable because, and only because, there is no relationship of master and servant between these defendants and the YSC employees for whose acts liability is sought to be imposed. They are simply fellow servants of the same master.

### B. FOURTEENTH AMENDMENT

The remaining challenge of the application of *respondeat superior* has been made by the City of Philadelphia. The City is the master of its employees, and thus the defect noted in the § 1983 claim against supervisors is not present in this claim. *See Carter v. Carlson, supra,* 447 F.2d at 367 n.24. Since the only cause of action against the City must be based directly upon the fourteenth amendment, the issue is whether vicarious liability is available in that cause of action.

We conclude that the policy justifying *respondeat superior* in tort law has equal force in an action under the fourteenth amendment. As Professor Prosser has noted, *respondeat superior* is a deliberate allocation of risk by which the costs, arising from anticipated harm to innocent individuals caused by actions of employees, are borne by the employer. This is reasonable since the employer, rather than the injured party, is in a better position to absorb the costs, insure against them and distribute the cost to society. *W. Prosser, The Law of Torts* 459 (4th ed. 1971). A governmental entity can only act through its employees and therefore the official acts of such employees are rightfully attributed to that employer-entity.

The need for *respondeat superior* in a fourteenth amendment claim is particularly compelling because that provision is intended by its terms to protect individual rights from abuse by municipalities and

other repositories of state power.[4] This reasoning has uniformly been accepted; those courts which have held that one can assert a § 1331 claim against a municipality, also have approved the inclusion of *respondeat superior* in that cause of action. *Culp v. Devlin,* C.A. No. 77–44, 437 F.Supp. 20 at 23–24 (E.D.Pa. May 25, 1977); *Shifrin v. Wilson,* 412 F.Supp. 1282, 1306–08 (D.D.C. 1976); *Croy v. Skinner,* 410 F.Supp. 117, 123–24 (N.D.Ga.1976); *Collum v. Yurkovich,* 409 F.Supp. 557, 559 (N.D.Ill.1975); *Williams v. Brown,* 398 F.Supp. 155, 160–61 (N.D.Ill.1975).

## VII. CRUEL AND UNUSUAL PUNISHMENT:

Defendants argue that plaintiffs' amended complaint fails to allege facts which could constitute a violation of the eighth amendment. In particular, the defendants suggest that the scope of review by a federal court concerning the conditions of institutional confinement is severely limited and that the alleged facts do not amount to a situation which is "barbarous" or "shocks the conscience", justifying federal intervention. We disagree.

 Notions of comity and the limitations placed upon the use of federal equitable power restrain federal courts from intruding into daily operation of state agencies. But federal courts also have the clear obligation to terminate conditions and actions which violate constitutional rights, particularly for those who are powerless to end such abuse. We find that the eighth amendment applies to the confinement of juveniles and prohibits conditions which are so inhumane and degrading to human dignity that they shock the conscience. The Court has held that this amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958), and therefore review of institutional

treatment mandates detailed scrutiny of the conditions of such confinement.

 Plaintiffs have challenged almost all aspects of the conditions of confinement and treatment at YSC. We note that conditions analogous to those challenged here have been declared unconstitutional by other federal courts. *See Pena v. N.Y. State Division for Youth,* 419 F.Supp. 203 (S.D.N. Y.1976); *Morales v. Turman,* 364 F.Supp. 166 (E.D.Tex.1973), *rev'd. on other grounds,* 535 F.2d 864 (5th Cir. 1976), *rev'd.* 430 U.S. 322, 97 S.Ct. 1189, 51 L.Ed.2d 368 (1977); *Martarella v. Kelley,* 349 F.Supp. 575 (S.D. N.Y.1972); *Inmates of Boys' Training School v. Affleck,* 346 F.Supp. 1354 (D.R.I. 1972). Use of excessive corporal punishment, solitary confinement, restraint of liberties, and inadequate treatment have been proscribed in these cases. Only after a factual hearing, will we be able to determine whether or to what extent the conditions at YSC violate the eighth amendment. We cannot conclude that plaintiffs will be able to prove no set of facts which would amount to a constitutional violation and therefore we must deny defendants' motion.

## VIII. 42 U.S.C. § 1983:

Several defendants, including the Mayor, City Managing Director, judges of the Family Court and Executive Director and Board of Managers of YSC, seek to have the suit dismissed against them on the ground that plaintiffs have failed to allege sufficient facts to demonstrate that these defendants participated in alleged constitutional deprivations. Relying on *Rizzo v. Goode, supra,* these supervisory defendants assert that absent a showing of a plan or "deliberate, affirmative actions" by them which have deprived plaintiffs of their federal rights, these defendants cannot be held liable. In addition, certain YSC personnel, those who have not been identified in the complaint as having participated in a specific incident of

---

**4.** We also conclude that even if *respondeat superior* were held inapplicable in a § 1983 claim, such a holding would not dictate a similar conclusion in an action pursuant to the fourteenth amendment. *See Note, Damage*

*Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922 (1976). Section 1983 is a statutory right and its interpretation does not control the boundaries ⸶ judicially created constitutional remedy.

mistreatment, seek dismissal of the suit against them because they have not been linked to constitutional deprivations.

■ Before analyzing the specific allegations concerning each of these defendants, it is first necessary to establish the principles which control liability in a § 1983 action. There are two essential components to a § 1983 claim; plaintiffs must demonstrate, first, that they have been or will be deprived of a federally protected right and second, that culpable conduct or inaction by defendants has "caused" that deprivation. Since we have found that plaintiffs have alleged sufficient facts to plead an eighth amendment claim, we are only concerned here with the second element, which analyzes defendants' participation in and responsibility for deprivation of a federal right.

Courts have struggled with this issue. In developing a legal standard they have encountered two questions: first, in analyzing defendants' conduct, what degree of culpability must be established to justify liability, *i. e.,* is it sufficient to show that defendants were negligent or must their conduct be intentional; and second, to what extent must defendants' conduct "cause" the alleged constitutional deprivation, *i. e.,* must defendant directly participate in the violation or can a failure to act or to supervise others justify liability.

In analyzing these questions one must begin with the Court's statement in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* at 187, 81 S.Ct. at 484. This language suggests that negligent conduct which proximately causes the deprivation of a federal right can justify liability. However, some courts have ignored or deviated from this tort analogy. In part this deviation is required because in certain cases the constitutional deprivation itself, *i. e.,* the first element of a § 1983 claim, requires that the defendant exhibit intentional conduct. For example, in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct.

285, 50 L.Ed.2d 251 (1976), the Court held that plaintiffs must demonstrate a *"deliberate* indifference to serious medical needs of prisoners" in order to establish a violation of the eighth amendment on the basis of a denial of adequate medical care in prison. 429 U.S. at 104, 97 S.Ct. at 291, *id.* at 260 (emphasis added). Courts have also varied the tort analogy according to the relief requested, usually requiring less connection with the constitutional violation when only equitable relief is sought in contrast to damages. To the extent that courts have rejected the tort analogy for other reasons, we disagree.

■ We conclude that a § 1983 claim may be founded upon negligent conduct by a defendant unless the specific constitutional violation alleged requires a greater degree of culpability. *See, e. g., Navarette v. Enomoto,* 536 F.2d 277, 281–82 (9th Cir. 1976); *Howell v. Cataldi,* 464 F.2d 272, 279 (3d Cir. 1972); *Culp v. Devlin,* 437 F.Supp. 20 (E.D.Pa.1977) (Newcomer, J.). *Cf. Shifrin v. Wilson, supra* at 1301–02. We find no limiting language in § 1983 or its legislative history which would suggest that Congress intended any greater degree of culpability than negligence on the part of defendants. Rather, § 1983 states that any person who "subjects, or causes to be subjected" another to a deprivation of a right "shall be liable". 42 U.S.C. § 1983. It does not state that the defendant must wilfully or intentionally cause that deprivation. In the development of official immunity under § 1983, a concept related to the issue of culpability, the Court has held that an official has no immunity if he or she *"reasonably should have known* that the action he took" violated a clearly established constitutional right. *Wood v. Strickland, supra,* 420 U.S. at 322, 95 S.Ct. at 1001 (emphasis added). We conclude that the statute and case law, *see Navarette v. Enomoto, supra* at 281 n.4 (cases cited therein), concerning § 1983 support the conclusion that only negligent conduct on the part of a defendant must be proven to justify liability under § 1983, unless the Court has specifically held that greater culpability is required be-

cause of the constitutional violation under review.

Defendants' argument that plaintiffs must demonstrate that the supervisory defendants took "deliberate" actions in depriving plaintiffs' rights, appears to rely upon *Rizzo v. Goode, supra.* We disagree that *Goode* stands for the proposition that intentional conduct is mandated in a § 1983 claim. A careful reading of the opinion reveals that the defendants could not be held liable for constitutional violations caused by subordinate policemen because the Court concluded that no action by defendants, be it intentional or negligent, was linked causally to any constitutional deprivation. The lack of causation rather than culpable conduct was the deficiency in that suit.

As previously noted, in certain cases a greater degree of culpability is required in a § 1983 claim because the specific constitutional deprivation necessitates intentional conduct. Two claims in this action are affected by this rule. The Court has held that purposeful discrimination is an element of a violation of the Equal Protection Clause of the fourteenth amendment. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450, 464 (1977); *Washington v. Davis,* 426 U.S. 229, 239–41, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Similarly in *Estelle v. Gamble, supra,* the Court required "deliberate indifference to serious medical needs" to plead an eighth amendment violation. *See also Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1080–81 (3d Cir. 1976). In contrast, the Ninth Circuit has held that negligent denial of first amendment rights of prisoners is actionable under § 1983. *Navarette v. Enomoto, supra* at 281–82.

 To the extent that racial segregation at YSC is challenged, intentional action must be alleged in order to plead a constitutional deprivation. Similarly, intentional conduct must be shown in the denial of adequate medical treatment by the defendants. But we also concur with the Ninth Circuit and hold that negligent denial of first amendment rights may be actionable. As to the other claims of constitutional violations we conclude that it would be inappropriate at this time to rule upon the degree of culpability required of defendants for each alleged violation. Instead, this element of the cause of action should be analyzed after the record has been developed concerning the conditions and treatment at YSC. We hold that the complaint is sufficient to meet the culpability requirement of § 1983 because plaintiffs have pleaded alternative theories of intentional and negligent conduct on the part of each defendant; it is alleged that these officials implemented unconstitutional policies at YSC and failed to remedy unconstitutional conditions and practices which they knew, or should have known, existed at YSC.

The second aspect of the participation element of a § 1983 claim is the causation question. Courts have struggled with this question in the context of determining the liability of a supervisor where the plaintiff has suffered a constitutional deprivation due to the misconduct of subordinates. The cases suggest that relief may not be obtained against supervisors unless they have participated in the offending conduct or have knowledge of and acquiesced in the constitutional deprivation. *See, e. g., Hampton v. Holmesburg Prison Officials, supra* at 1082; *Black v. Brown,* 513 F.2d 652, 654 n.3 (5th Cir. 1975); *United States ex rel. Bennett v. Prasse,* 408 F.Supp. 988, 991 (E.D.Pa.1976); *Fialkowski v. Shapp,* 405 F.Supp. 946, 950 (E.D.Pa.1975). But in applying the "knowledge and acquiescence" standard, courts have had difficulty in specifying precise criteria for judging liability. They have considered the following factors: the knowledge a defendant-supervisor has, or should have, of the conduct of subordinates; the degree of authority and control the supervisor has over the conduct of subordinates; the existence *vel non* of policies or practices within the supervisor's governmental department which relate to the offending conduct; and the extent to which the supervisor has encouraged or acquiesced in these practices and/or subordinates' misconduct.

■ Three principles must be applied in analyzing these factors. First, the greater the duty a supervisor has to control those employees who actually committed the violation, the less specific knowledge of the offending conduct the supervisor will be required to have. For example, in *Fialkowski v. Shapp, supra,* the court stated:

"The cases do suggest, however, that in situations where an official has direct supervisory control over persons committing the alleged violations, the supervisor's general knowledge of the situation triggers an affirmative duty to investigate further. Assuming that a valid constitutional claim has been raised, the official's failure to take any disciplinary action against his subordinates constitutes a breach of the duty owed to those persons injured and a direct cause of their continuing deprivations."

*Id.* at 950. *See also Holland v. Connors,* 491 F.2d 539 (5th Cir. 1974); *Wright v. McMann,* 460 F.2d 126 (2nd Cir.), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972); *Moon v. Winfield,* 368 F.Supp. 843 (N.D.Ill.1973). Once a duty is established, failure to act is actionable under § 1983. *Hupart v. Board of Higher Education of City of N. Y.,* 420 F.Supp. 1087, 1109 (S.D.N.Y.1976); *McKee v. Breier,* 417 F.Supp. 189, 190 (E.D.Wis.1976).

■ In contrast, when liability is sought against higher officials who have less direct supervisory control, general knowledge of misconduct and a failure to act will not suffice to prove that these superiors were responsible for the deprivation of rights by subordinates. In these situations in order to justify relief against these defendants, the plaintiff must show specific knowledge of the misdeeds and specific evidence of approval or acquiescence by the official in the constitutional deprivation. *See, e. g., Fialkowski v. Shapp, supra* at 952–54; *Pinon v. State of Wis.,* 368 F.Supp. 608, 611 (E.D.Wis.1973); *Downs v. Dept. of Public Welfare,* 368 F.Supp. 454, 464–65 (E.D.Pa. 1973).

■ The second principle which we derive from the application of these various factors is that the existence of general policies and practices within the supervisor's department can create a constructive knowledge on his or her part of the alleged constitutional deprivation. In addition, acceptance or support of these policies and practices can substitute for proof that the supervisor acquiesced in the particular misdeed of subordinates. In *Holland v. Connors, supra,* the Fifth Circuit held a complaint by a prisoner was sufficient to state a cause of action against a prison superintendent where the prisoner alleged that the superintendent was legally responsible for an unconstitutional interrogation by prison guards because "such practices were so widespread and had been standard procedure at the institution for so long that he was or must have been aware of them" even though the superintendent was not present during the specific questioning involved in the case. *Id.* at 541. *See also Black v. Brown, supra* at 654 n.3; *Tucker v. City of Montgomery Board of Comm'r,* 410 F.Supp. 494, 508 (M.D.Ala.1976). Causation is established here from the fact that the subordinate's action is an implementation of the policies or practices endorsed by the supervisor.

We conclude that the decision in *Rizzo v. Goode, supra,* does not conflict with the principles of causation previously described. The plaintiffs in *Goode* sought injunctive relief against supervisory officials of Philadelphia to halt an allegedly pervasive pattern of misconduct by city policemen directed against the plaintiff class. The trial court did not find a pervasive pattern but did describe approximately 20 incidents of illegal action and concluded that "violations of constitutional rights by police do occur in an unacceptably high number of instances." *COPPAR v. Rizzo,* 357 F.Supp. 1289, 1321 (E.D.Pa.1973). The Supreme Court reversed the grant of injunctive relief because the facts established at trial failed to show any link between the misconduct by policemen and a plan or policy of defendants—"express or otherwise—showing their authorization or approval" of the misconduct. *Rizzo v. Goode, supra,* 423 U.S. at

371, 96 S.Ct. at 604. Instead, the Court emphasized the trial court's findings that the constitutional violations were due to the actions of a minority of policemen and that the problems existing in the police department were similar to those encountered in any major urban area. The Court concluded that a failure to act by these officials in light of the limited statistical pattern of misconduct shown at trial would not justify federal court intervention into the operation of the city's police department.

The Third Circuit has followed *Goode* in *Lewis v. Hyland,* 554 F.2d 93 (3d Cir. 1977), in which it upheld the trial court's denial of injunctive relief sought by travelers on New Jersey roads against New Jersey officials, including the Attorney General and Superintendent of State Police, for alleged violations of fourth amendment rights by state police. The Third Circuit concluded that there was no causal link between the defendants and the proven misdeeds because the trial court found no pattern or practice of violation of constitutional rights by the officials and "[t]hose instances of illegality were no more than willful and random acts on the part of a minority of the Troopers." *Id.* at 100.

In *Goode* and *Lewis* the causation requirement of § 1983 was not satisfied because the courts concluded that any failure to act by these defendant-officials was not responsible for the limited number of violations perpetrated by a small percentage of subordinate employees. In addition, there was no affirmative conduct taken by the defendants to encourage such activity; plaintiffs failed to show any department-wide plan, policies or practices which could be linked to the instances of police misconduct. Implicit in *Goode,* though, is the notion that a *pervasive pattern* of abuse may justify federal intervention into the operation of a police department. *Rizzo v. Goode, supra,* 423 U.S. at 373–75, 96 S.Ct. 598.

We conclude that these decisions are dependent upon the specific factual setting developed at trial and that the Court was not holding that a failure to act or supervise may never be causally linked to subsequent abuse by subordinates. Several circuits have approved relief where supervisory officials have failed to act in the face of constitutional violations,[5] and decisions since *Goode* have continued to recognize this theory of liability. *See, e. g., Sims v. Adams,* 537 F.2d 829, 831–32 (5th Cir. 1976); *Hupart v. Bd. of Higher Ed. of City of New York, supra* at 1109; *McKee v. Breier, supra* at 191. *Cf. Shifrin v. Wilson, supra* at 1301 n.22.

▮ The final principle which we will apply is that the degree of participation required of a particular defendant is less when only injunctive relief is requested if the court determines that some equitable relief is necessary to prevent constitutional violations. *Downs v. Dept. of Public Welfare,* 368 F.Supp. 454 (E.D.Pa.1973). In such cases the inclusion of additional defendants does not substantially increase the scope of the remedy imposed by the court but does improve the effectiveness of such relief. We distinguish this situation from *Goode* because, in that case, there was no causal link to *any* departmental official and therefore the need for injunctive relief directed toward the entire police force was not justified.

Applying these principles to this case, we conclude that plaintiffs have alleged sufficient facts to establish the defendants' participation in constitutional violations concerning the class claim for equitable relief, but we find the complaint inadequate against the Mayor and City Managing Director for the claim of damages on behalf of the named plaintiffs.

## A. BOARD OF MANAGERS and EXECUTIVE DIRECTOR OF YSC

▮ These defendants argue that they cannot be held liable for alleged constitu-

---

5. *See, e. g., Inmates of Suffolk County Jail v. Eisenstadt,* 494 F.2d 1196, 1199 (1st Cir.), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974); *Dewell v. Lawson,* 489 F.2d 877, 881 (10th Cir. 1974); *Smith v. Ross,* 482 F.2d 33, 36–37 (6th Cir. 1973); *Jennings v. Davis, supra* at 1275; *Wright v. McMann, supra* at 134–35; *Carter v. Carlson, supra* at 365.

tional violations because plaintiffs have failed to allege that these defendants have directly or indirectly participated in the circumstances giving rise to plaintiffs' claims or have taken any deliberate affirmative action to deprive plaintiffs of their rights. We disagree with this summarization of the complaint and find that plaintiffs have alleged sufficient facts to link these defendants to constitutional violations.

In the class action claim plaintiffs assert that there are institutional policies and practices established or accepted by these defendants concerning the physical environment, disciplinary practices, restraints on liberties and denial of treatment and rehabilitative services which offend constitutional mandates. Given these allegations and the statutory duty of the Board to manage and supervise YSC pursuant to 11 P.S. § 443 [6], we conclude that the participation requirement of § 1983 has been satisfactorily alleged. The Executive Director, as the immediate supervisor of YSC, *a fortiori* is sufficiently connected to and responsible for the environment at YSC to be included in the claim for injunctive relief.

In terms of the damage claims by the individual named plaintiffs, we believe that the complaint is likewise sufficient to include these defendants, given the allegation that excessive use of corporal punishment and solitary confinement is a primary method of enforcing discipline and that routinely children are subjected to violence by staff personnel. Here we have both an allegation of a policy implemented by these defendants and an allegation of a pervasive pattern of abuse which links these defendants to the violations.

B. ADMINISTRATIVE JUDGE MONTEMURO and JUDGES OF THE FAMILY COURT

The involvement of the judges of the Family Court in the operation of YSC is more attenuated than that of the previous defendants, but since only equitable relief has been requested against them, we find that the complaint is sufficient. The allegations concerning Judge Montemuro suggest that he has substantial input into the management of YSC due to his position as Administrative Judge and his alleged participation in the planning of YSC programs. The remaining Family Court judges are less involved but do exert some authority over the institution, including the appointment of the Board of Managers and the "exclusive jurisdiction over all houses of detention," pursuant to Pa.Const. Sched. Art. 5 §§ 16(c) and (q)(ii), 11 P.S. § 442 and 17 P.S. §§ 700 and 705. Although minimal, this participation in YSC management is adequate to justify their inclusion in the suit based upon the allegation that the policies and practices of the Board of Managers have resulted in constitutional deprivations.

C. MAYOR FRANK RIZZO and MANAGING DIRECTOR HILLEL LEVINSON

We find that the allegation concerning defendants Rizzo and Levinson are inadequate to justify a damage claim by the named plaintiffs, but that the complaint is minimally sufficient to include them in the claims for equitable relief relating to the overall conditions and practices at YSC. Plaintiffs maintain that defendants Rizzo and Levinson knew of the allegedly unconstitutional conditions and practices at YSC. The inclusion of these defendants in the suit by the class is justified because of the allegations of defendants' knowledge of abuses, their statutory authority over the funding of YSC, 11 P.S. § 447 and their administrative duties pursuant to Philadelphia Home Rule Charter §§ 4.4–100 to –106 and 5.5–100 to –102.

As to the damage claim of the individual plaintiffs, we find that the allega-

---

**6.** Section 443 provides in pertinent part:

"The duties of the board of managers shall be to provide a house . . . for the reception of children . . . to keep the [house] in repair, and generally to fit and furnish said house so that the same may be suitable for the care of the children intended to be received, . . . and generally to supervise and oversee the management of said house."

tions against Rizzo and Levinson are too conclusory and nonspecific to justify liability. The plaintiffs have not alleged facts to demonstrate the knowledge and acquiescence of these defendants in the particular incidents of violence or the alleged practice of excessive force and restraints by YSC personnel used against the named plaintiffs. Since these defendants have limited authority to control such activity, an allegation of general knowledge is insufficient to plead liability for damages. In light of *Goode,* we find that it would be inappropriate to infer some causal connection between these defendants' conduct and the specific abuses based upon the pattern of violence described in the complaint. Therefore, the named plaintiffs' claim against these defendants will be dismissed without prejudice.

### D. YSC STAFF

■ Defendants also move to dismiss the suit against those employees at YSC who have not been named in any specific allegation of violence by staff toward YSC residents. We find that the claim for equitable relief on behalf of the class is sufficient to include all YSC personnel because there is an allegation of a practice by these defendants of using excessive corporal punishment and solitary confinement for discipline. As to the claim for damages by the named plaintiffs, we believe that at this point in the proceeding, the claims against the staff are minimally adequate because of the alleged pattern of staff violence and that plaintiffs should be given the opportunity to continue discovery to identify all those involved in staff misconduct.

### IX. 42 U.S.C. §§ 1985(3) AND 1986:

Plaintiffs claim that Judge Montemuro, members of the Board of Managers, YSC Executive Director and YSC staff have violated 42 U.S.C. § 1985(3) by agreeing "either expressly or impliedly, to impose, perpetrate or fail to remedy the allegedly unconstitutional conditions and practices at YSC." Plaintiffs' Amended Complaint ¶ 70(d). These defendants challenge this claim on the ground that plaintiffs have not sufficiently alleged facts to justify either an accusation of a conspiracy among these defendants or an accusation of overt acts in furtherance of that conspiracy. We find that plaintiffs have adequately pleaded a § 1985(3) claim against these defendants.

■ Section 1985(3) creates a cause of action whenever an individual has been injured due to a conspiracy motivated by invidious discrimination which has resulted in a deprivation of rights secured by the Constitution or federal statute. *See Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Local No. 1 (ACA) v. I.B.T., C., W. & H.,* 419 F.Supp. 263, 275 (E.D.Pa.1976). Since we have found that plaintiffs have alleged a deprivation of their rights by these defendants in our analysis of § 1983, we must decide in this claim whether plaintiffs have averred sufficient facts to support an allegation that: (1) defendants conspired to deprive plaintiffs of their rights; (2) defendants were motivated by "class-based, invidiously discriminatory animus", *Griffin v. Breckenridge, supra,* 403 U.S. at 102, 91 S.Ct. 1790; and (3) overt acts have been committed in furtherance of the conspiracy.[7]

■ Plaintiffs' complaint satisfies the conspiracy element of § 1985(3). Conspiracy in this context means that the co-conspirators must have agreed, at least tacitly, to commit acts which will deprive plaintiff of equal protection of the law.

---

**7.** We note that both damages and injunctive relief can be sought under § 1985. *Action v. Gannon,* 450 F.2d 1227, 1237–38 (8th Cir. 1971) (en banc); *Pennsylvania v. Local 542, Int'l Union of Operating Engineers,* 347 F.Supp. 268, 290–91, 301–02 (E.D.Pa.1972). Because all defendants act under color of state law, we do not have to be concerned with the problem of finding constitutional authority for applying § 1985 in this situation; the fourteenth amendment clearly supports the statute. We also note that the immunity defense and personal involvement of defendants discussed *supra* apply as well to a § 1985 action, and therefore, defendants Rizzo and Levinson must be dismissed without prejudice from the damage claim by the named plaintiffs.

The complaint requires that we infer an agreement based upon the allegations that the unconstitutional conditions and practices at YSC were due to policies and practices approved or accepted by the Board of Managers, Judge Montemuro and YSC Executive Director and implemented by YSC staff. We conclude that at this stage of the proceedings such an inference is reasonable. We find that it is likely that decisions, applicable to the entire institution, control the allegedly unconstitutional physical conditions at YSC, limitations placed upon liberties, lack of educational and rehabilitative services, use of abusive disciplinary techniques and the admission criteria at YSC. Since the supervisory defendants are allegedly responsible for such decisions and the YSC staff have allegedly enforced them, it is reasonable to infer that a tacit agreement among these defendants exists concerning conditions at YSC.

We also find that plaintiffs' complaint satisfies the requirement that defendants' actions must be motivated by discriminatory animus. There has been extensive discussion in the courts concerning whether and to what extent the term "class-based, invidiously discriminatory animus" can be applied beyond racial discrimination. *See, e. g., McLellan v. Miss. Power & Light Co.,* 545 F.2d 919, 928 (5th Cir. 1977) (en banc); *Phillips v. Trello,* 502 F.2d 1000, 1005 (3d Cir. 1974). We hold that this element is met if the plaintiff can allege that there is discrimination against a well-defined class, *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973), and that such discrimination: (1) affects a traditionally disadvantaged group (*e. g.,* "suspect" classification); (2) is irrational; or (3) unnecessarily burdens plaintiff's exercise of a "fundamental" right. *Local No. 1 (ACA) v. I.B.T., C., W. & H., supra* at 277.

In terms of plaintiffs' claim of racial segregation this prerequisite is clearly satisfied because such discrimination involves a suspect class. As to plaintiffs' claims that the conditions and practices at YSC violate the first, fourth, fifth and eighth amendments, we conclude that the plaintiffs have sufficiently alleged a well-defined class whose "fundamental" rights have been affected to meet this element of a § 1985(3) claim.

The final prerequisite of § 1985(3) is the existence of an overt act by a co-conspirator in furtherance of the conspiracy. As to the claim of excessive corporal punishment and solitary confinement, we find that this element is satisfied by the actions of the staff who allegedly are enforcing practices and procedures approved by YSC management. Defendants' placement of juveniles at YSC satisfies the requirement of overt acts for claims of unconstitutional conditions, racial segregation and lack of care at YSC.

In addition to the § 1985(3) claim, plaintiffs assert that defendants Rizzo and Levinson have violated 42 U.S.C. § 1986 because they knew of the conspiracy previously described, had an opportunity to prevent the resultant deprivation of rights and neglected or failed to prevent such violations. This cause of action requires that a defendant know of a § 1985(3) conspiracy and "having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . ." 42 U.S.C. § 1986. It can only be pleaded once plaintiffs have sufficiently alleged a § 1985(3) violation. *Hahn v. Sargent,* 523 F.2d 461, 470 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

We find that the complaint is minimally adequate to plead a § 1986 cause of action on behalf of the class based upon unconstitutional overall conditions at YSC because: (1) we accept the allegation of a § 1985 conspiracy; (2) plaintiffs have alleged that through reports by state and city officials these defendants were aware of the practices at YSC for which the co-conspirators are allegedly responsible; and (3) these defendants have some authority, although limited, to control policies and practices at YSC pursuant to the Philadelphia Home Rule Charter and 11 P.S. § 447.

X. 42 U.S.C. § 1994:

Plaintiffs assert that some YSC residents have been forced to work without

compensation and thereby have been subjected to involuntary servitude in violation of 42 U.S.C. § 1994 and the thirteenth amendment. Defendants argue that these provisions are not applicable to these plaintiffs. We disagree.

Section 1994 is intended to implement the thirteenth amendment and as such the boundaries of its application must be derived from that amendment. Although we are not certain as to the full scope of § 1994, at this point in the proceedings we cannot conclude that plaintiffs will be able to prove no set of facts that would amount to a thirteenth amendment violation.

The Supreme Court stated in *Pollock v. Williams*, 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095 (1944), "[t]he undoubted aim of the Thirteenth Amendment . . . was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States." *Id.* at 17, 64 S.Ct. at 799. Defendants argue that the thirteenth amendment's prohibition was intended to abolish peonage and is not available to these plaintiffs because it does not apply to persons convicted of a crime. *See Kent v. Prosse*, 265 F.Supp. 673, 674 (W.D.Pa.), aff'd, 385 F.2d 406 (3d Cir. 1967). Assuming, without deciding, that defendants' statement of the law with respect to prisoners is correct, we do not believe that the same rule should apply to these plaintiffs. Several courts have recognized a claim under the thirteenth amendment in cases of civil commitment to mental health institutions. *Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966); *Downs v. Dept. of Public Welfare*, 368 F.Supp. 454 (E.D.Pa.1973); *Wyatt v. Stickney*, 344 F.Supp. 373 (M.D. Ala.1972). In addition, the court in *King v. Carey*, 405 F.Supp. 41 (W.D.N.Y.1975), held that juvenile delinquents committed to two camps of the New York State Division for Youth could raise a claim of involuntary servitude in a situation substantially similar to this action.

Declaring that juveniles confined at YSC are prisoners or civilly committed persons should not control the outcome of this constitutional claim. Rather, the justification for confining juveniles should determine the appropriateness of work assignments for YSC residents. We find that a full record is necessary to make this complex analysis; therefore defendants' motion to dismiss § 1994 and thirteenth amendment claims must be denied.

## XI. 42 U.S.C. § 2000d:

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, prohibits racial discrimination in any program funded by federal financing. Plaintiffs assert that there is racial discrimination in the placement of juveniles at YSC, that YSC is partially financed by federal funds, and that such segregation can therefore be challenged as a violation of 42 U.S.C. § 2000d.

Defendants object to this cause of action, claiming that plaintiffs must exhaust their administrative remedies as a prerequisite to suit in federal court. Plaintiffs respond that they are not required to exhaust administrative remedies because the exhaustion requirement arises from 42 U.S.C. § 2000d–2[8] which is intended for review of federal agency action taken pursuant to § 2000d–1[9]. Plaintiffs argue that since

---

8. Section 2000d–2 provides:

"Any department or agency action taken pursuant to section 2000d–1 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 2000d–1 of this title, any person aggrieved . . . may obtain judicial review of such action in accordance with [Administrative Procedure Act] and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that section."

9. Section 2000d–1 provides in part:

"Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, . . . is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. . . ."

they are not objecting to any federal agency action, the exhaustion requirement of § 2000d–2 is inapplicable to them. In addition plaintiffs argue that the issues involved in this action are legal and are not addressed to a particular area of administrative expertise and that exhaustion, therefore, is not necessary.

We conclude that plaintiffs' theory of exhaustion under 42 U.S.C. § 2000d is too restrictive. Although an exhaustion requirement arises directly from § 2000d–2, we find that exhaustion may be implied as a prerequisite to any action pursuant to § 2000d *et seq.* because of the enforcement policies implicit in Title VI. As the court stated in *Johnson v. County of Chester*, 413 F.Supp. 1299, 1310 (E.D.Pa.1976), "[t]he scheme of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*] is essentially administrative." The statute intends that the federal agency involved in the allocation of funds "attempt at the outset to secure compliance by voluntary means, if such method is reasonably possible." *Adams v. Richardson*, 351 F.Supp. 636, 641 (D.D.C.1972), *aff'd*, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973).

The Department of Health, Education and Welfare controls the distribution of federal funds to YSC. In accordance with 42 U.S.C. § 2000d–1, HEW has promulgated an extensive regulatory scheme to ensure compliance with Title VI for any federal financing for which it is responsible. 45 C.F.R. § 80. In particular, 45 C.F.R. §§ 80.-7–80.10 establish procedures for filing a complaint by any person or class who believes that they have been discriminated against, for investigating such complaint and for ensuring compliance with § 2000d.

In light of this administrative procedure, we conclude that plaintiffs have a duty to exhaust their administrative remedies or plead sufficient facts to support the contention that such exhaustion would be ineffective or futile. Plaintiffs apparently have not contacted the federal agency involved and have not sufficiently alleged facts to justify an exception to the exhaustion requirement. Therefore, plaintiffs' § 2000d claim will be dismissed without prejudice.

## XII. RIGHT OF PRIVACY:

Defendants maintain that residents of YSC have no right of privacy. In particular, defendants argue that plaintiffs have no fourth amendment rights once confined at YSC. Without specifying the limits of plaintiffs' fourth amendment protection, we must disagree with defendants' assertion.

In *Bonner v. Coughlin*, 517 F.2d 1311, 1315, 1317 (7th Cir. 1975), now Justice Stevens, speaking for the Seventh Circuit, held that prisoners do retain some measure of fourth amendment protection. Juveniles, some of whom have not even been adjudicated delinquent, *a fortiori* retain certain fourth amendment protections. Defendants have not presented any justification for terminating all fourth amendment protections for YSC residents and therefore we reject the proposition that these juveniles must lose all expectations of privacy once confined.

## XIII. PENDENT STATE LAW CLAIMS:

Defendants argue that this court should not exercise pendent jurisdiction over the state law claims of plaintiffs. Given our decision to retain the federal constitutional claims, we find that the federal and state law claims arise "from [a common] nucleus of operative fact" so that they may be tried conveniently and economically in one forum. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Therefore we will retain jurisdiction over the state law claims.