Edward **KIMBLE**, Plaintiff,

v.

STATE OF MICHIGAN CORRECTION DEPARTMENT, George A. Kropp, Leo Lafay, Keith Adams and Buster Bunch, Defendants.

Civ. No. 31350.

United States District Court
E. D. Michigan, S. D.

Sept. 20, 1968.

Edward Kimble, in pro. per.

Frank J. Kelley, Atty. Gen., for State of Mich., Lansing, Mich., for defendants.

## ORDER GRANTING MOTION TO DISMISS

THORNTON, District Judge.

The above matter came on to be heard upon the Complaint of the plaintiff and a Motion to Dismiss submitted by the defendants.

The plaintiff alleges in part as follows:

"1. Jurisdiction is invoked under Section 1343 U.S.C.A. Title 28; Section 1983 U.S.C.A. Title 42; and the 14th Amendment to the United States Constitution.

2. During all times herein mentioned, plaintiff was a citizen of the United States, a person within the jurisdiction thereof, and resident of the State of Michigan.

3. During all times herein mentioned, the defendants, and each of them were correction officials, of the Department of Correction of the State of Michigan, a state corporation, and were agents of said Department, acting in their respective duties as administrative and custodial officers.

4. During all times herein mentioned, the defendant George A. Kropp was the Warden of Southern Michigan State Prison a subdivision of said Correction Department, and the defendants Leo Lafay, Keith Adams and Buster Bunch were custodial officers assigned to said Prison.

6. During all times herein mentioned, the defendants, and each of them were acting under color of the statutes, ordinances, regulation, customs and usages of the State of Michigan.

7. During all times herein mentioned, the plaintiff Edward Kimble was: a resident of Southern Michigan State Prison under a life sentence.

8. On August 16, 1967, inside the walls at Southern Michigan State Prison, the defendants Lafay, Adams and Bunch acting under the orders of the defendant Kropp, did the following acts:

(a) They took from plaintiff his money in the amount of three hundred and fifty dollars ($350.00) and notified him that his money would not be placed in his account, but would be turned over to a so-called General Benefit Fund.

9. None of the defendants, at any of the time herein mentioned, and more particular at the time and place of the events described in paragraph 8 above, were authorized by law to take away plaintiff's money and turn it over to said General Benefit Fund, because no judgment, order or otherwise lawful determination was ever entered against plaintiff by any court, administrative board or any other lawful process.

10. The aforesaid acts of the defendants constitute a violation of the constitution and laws of the United States, in that the plaintiff was deprived by the defendants, and each of them, of right not to be deprived of his property without due process of the law, all in violation of Amendment 14 of the United States Constitution and 42 U.S.C.A. Sec. 1983.

11. As a consequence of the aforesaid acts on the part of the defendants, and each of them, the plaintiff Edward Kimble has been deprived of privileges to buy the necessities of life: which are not furnished by the Correction Department; suffered great mental anguish, and injured feelings, from then until now and will continue to be denied the necessities of life, suffering mental and injured feelings by reasons of the aforesaid acts of the defendants.

Wherefore plaintiff demands: (a) that the defendants be required to return to plaintiff his money in the amount of three hundred and fifty dollars ($350.-00), via being deposited in his Account in the Cashier Office at Southern Michigan State Prison and (b) damages against the defendants, and each of them jointly and severally, in the amount of five thousand dollars ($5,000.00) plus the cost of this action."

Attached to the defendants' Motion to Dismiss, as "Exhibit A," is a copy of certain prison regulations of the institution that has custody of the plaintiff, and "Exhibit B," which appears to be a Xerox copy of a Michigan Department of Corrections Disciplinary Board Report relating to the plaintiff. The authenticity of either of these exhibits has not been questioned by the plaintiff.

Exhibit A is entitled "Inmate Accounting—Policy on Inmate Funds." Section 1 of that exhibit reads as follows:

"An inmate may accumulate funds from his institutional earnings, money mailed or brought to the institution by family members or approved correspondents; government checks; or money sent by legitimate business or legal establishments. All funds brought with the inmate to the Reception-Diagnostic Center will be credited to his account."

Section 2 of the said exhibit reads as follows:

"Funds received through the mail or left at the Cashier's Office with instructions that they are for a specific use shall be frozen in the inmate's account for this use only and may not be released unless specifically authorized in writing by the benefactor."

Section 11 of the said exhibit reads as follows:

"Contraband money confiscated from inmates will be placed in the Inmate General Benefit Fund. The privilege of store or scrip ordering is suspended during the inmate's stay in detention."

From the foregoing exhibit it is apparent that the possession of cash or other evidences of cash by the inmates of the institution is subject to regulations, and the said regulations vest in the officials of the institution the right

to confiscate contraband money from inmates and place the same in the Inmate General Benefit Fund.

Exhibit B, the Disciplinary Board Report, contains the following information:

| "Nature of Viol. | Contraband |
|---|---|
| Officer's Statement | I was making front gate release when Officer Bunch came after me. I called J. Webb from the Arsenal. Bunch told me that 67631 Kimble and 107697 Wilkinson were out collecting. He said he did not know which one would have the money, scrip or pills, but he was sure they were equally involved. We proceeded to the North Yard where we accosted them at the rear of the dining room. Officer J. Webb took $350 in cash, a sack containing some capsules and pills and a scrip book belonging to 105825 Douglas. |
| Inmate's Statement | Subject states that he does not want to change the report. However, he then added that he had obtained the money by selling cigarettes for cash and intended to turn the money into his account whenever this would be permitted. He denies the pills and maintains that somebody planted them on him. |
| Findings | It is noted that Kimble had maintained a satisfactory record for a few years. However, the Board also wants to note the seriousness of the offense and it is felt that he was well aware of the pills. He was advised that the money would be confiscated and turned over to the general benefit fund. |
| Disposition | Guilty. 10 days detention and '000'. Again, it is noted that the money is to be turned over to the general benefit fund." |

From the foregoing Exhibit B it is apparent that the inmate Kimble and the possession of the $350 cash was investigated by the prison officials, and that the said investigation resulted in a finding of guilty as to the possession of the said money by Kimble and a disposition that the money should be turned over to the General Benefit Fund.

United States ex rel. Wagner v. Ragen, 213 F.2d 294, 295 (C.A. 7, 1954) relates in part as follows:

"The federal courts have held that they do not have the power to control or regulate the ordinary internal management and discipline of prisons operated by the states. * * * 'Inmates of State penitentiaries should realize that prison officials are vested with wide discretion in safeguarding prisoners committed to their custody. Discipline reasonably maintained in State prisons is not under the supervisory direction of federal courts.' * * * 'A prisoner may not approve of prison rules and regulations, but under all ordinary circumstances that is no basis for coming into a federal court seeking relief even though he may claim that the restrictions placed upon his activities are in violation of his constitutional rights.' * * * 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retrac-

tion justified by the considerations underlying our penal system.' "

Since the action by the prison officials that is the subject matter of the plaintiff's complaint is a properly regulated function of the administration of the State Prison of Southern Michigan, at Jackson, Michigan, it does not constitute a violation of the civil rights of the plaintiff, as provided for in Section 1983, Title 42 of the United States Code. The said Motion to Dismiss is herewith granted.