Allen CAMERON

v.

**MONTGOMERY COUNTY CHILD
WELFARE SERVICE et al.**

Civ. A. No. 78–3677.

United States District Court,
E. D. Pennsylvania.

April 19, 1979.
On Motion for Summary Judgment
May 22, 1979.

Robert G. Schwartz, Alexander J. Palamarchuk, Juvenile Law Center of Phila., Philadelphia, Pa., for Cameron.

John M. McAllister, Philadelphia, Pa., for Montgomery County.

Hugh J. Hutchison, Philadelphia, Pa., for Children's Home.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff brought this civil rights action seeking redress for defendants' alleged "failure to provide him with adequate care, treatment, or services which would have enabled him to return home and be reunited with his mother during the three and one-half years that he was separated from her following his adjudication as a deprived child by the Montgomery County Juvenile Court." Complaint ¶ 2. Defendants A. Russell Parkhouse, Frank W. Jenkins, and Lawrence H. Curry have moved to dismiss. The moving defendants are sued individually and in their official capacities as County Commissioners of Montgomery County. In support of their motion defendants contend that they lack sufficient personal involvement in the alleged deprivation of plaintiff's rights to support liability under 42 U.S.C § 1983 and that the action against them is barred by legislative immunity.

In evaluating a motion to dismiss, our role is a fairly narrow one, for "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80

(1957) (footnote omitted). As the Supreme Court stated in *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." While making this determination, "the allegations of the complaint should be construed favorably to the pleader." *Id.*

The portions of the complaint upon which the instant motion turns are the following:

38. Defendants Parkhouse, Jenkins, and Curry, as the County Commissioners of Montgomery County, are directly responsible, pursuant to Pennsylvania law and regulations, for providing or causing to be provided, and for funding necessary child welfare services in Montgomery County designed to keep children in their own homes. However, these defendants have not provided necessary funds to defendant CWS to develop such services and in failing to do so are responsible for plaintiff's restricted and continuous confinement for almost four years.

39. Defendants Parkhouse, Jenkins, and Curry are further responsible, pursuant to Pennsylvania law and regulations, for providing or causing to be provided community-based residential facilities or foster homes which would have facilitated plaintiff's return to his mother, or at least, provided for plaintiff's confinement in a less restrictive community-based setting.

42. At all times pertinent hereto, all defendants knew, or should have known, that plaintiff's continued restricted confinement away from his mother and home, without providing services to him or his mother, and without notifying him of his right to counsel and of his right to have his placement reviewed by a court, was done in violation of plaintiff's statutory and constitutional rights, or that defendants did so with the malicious intention of causing a deprivation of plaintiff's statutory and constitutional rights.

43. The failure to provide treatment to plaintiff and his mother, the failure to provide community-based residential facilities, the failure to notify plaintiff of his right to counsel and of his right to have his placement reviewed by a court, and the failure to schedule plaintiff's case for review by the Montgomery County Juvenile Court were all done pursuant to the official policy, practice, and custom of defendants Parkhouse, Jenkins, Curry, and [Montgomery County Child Welfare Services] and its agents and employees.

Plaintiff concedes that personal involvement is required in a § 1983 action. *See Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D. Pa.1975). He argues, however, that the requisite involvement is present in this case. In Pennsylvania, County Commissioners are designated as the "executive and administrative officers of the institution district" of their respective counties. 62 P.S. § 2252. The institution districts are charged with responsibility for the administration of the child welfare services within the county. Pennsylvania Department of Public Welfare, Children & Youth Manual § 3211 (1969) (hereinafter cited as C & Y Manual). The county institution districts are bound by the regulations promulgated by the Department of Public Welfare. 62 P.S. § 703. Those regulations require the institution districts, *inter alia,* to budget adequate funds to provide for children accepted for service, appraise the adequacy of the child welfare program, and assure compliance with applicable State and Federal Regulations. C & Y Manual § 3211.1b(1–8). Moreover, the institution districts are charged with establishing "[w]ritten policies and procedures for the operations of the public child welfare agency" which "shall reflect the intent of the state statutes authorizing county child welfare services and shall adhere to appropriate regulations of the Department of Public Welfare." *Id.* § 3220A.

The statutory and regulatory scheme evidences a duty on defendants' part to supervise the administration of child welfare services in Montgomery County. Although it would appear that "the mere right to control without any control or di-

rection having been exercised and without any failure to supervise is not enough to support § 1983 liability," *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037, n. 58, 56 L.Ed.2d 611 (1978), it has been stated that "findings of general knowledge combined with direct supervisory control may be sufficient to hold an official personally involved in the unlawful acts of his subordinates." *Fialkowski v. Shapp, supra,* 405 F.Supp. at 951. It has also been noted that "the greater the duty a supervisor has to control those employees who actually committed the violation, the less specific knowledge of the offending conduct the supervisor will be required to have." *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 152 (E.D.Pa.1977). Moreover, "the existence of general policies and practices within the supervisor's department can create a constructive knowledge on his or her part of the alleged constitutional deprivation." *Id.*

■ Plaintiff's complaint, liberally construed, alleges that the moving defendants had responsibility for providing for and funding necessary child welfare services, that had those services been provided plaintiff's return to his mother or at least a less restrictive placement would have been facilitated, that defendants were aware, or should have been aware, that his continued restricted placement deprived him of his statutory and constitutional rights, and that he was deprived of his rights pursuant to the official policy, practice, and custom of the moving defendants. We believe that plaintiff's complaint, when judged by the standards which we must apply, *see Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Richardson v. Pennsylvania Dept. of Health,* 561 F.2d 489, 492 (3d Cir. 1977); *Gittlemacker v. Prasse,* 428 F.2d 1, 3 (3d Cir. 1970), alleges sufficient personal involvement on the part of the moving defendants to entitle plaintiff to adduce evidence in support of his claim.

■ We must therefore determine whether the suit against the moving defendants is barred by legislative immunity. Although defendants do not specify whether the immunity they assert is qualified or absolute, it is clear that defendants' attempt to have the complaint against them dismissed at this time is contingent upon a finding that absolute immunity applies. As Judge VanArtsdalen explained in *Burkhart v. Saxbe,* 397 F.Supp. 499, 502 (E.D.Pa. 1975), "Absolute immunity may be conceptualized as a shield from civil liability. Qualified immunity, on the other hand, is an affirmative defense on the merits which must be alleged in the pleadings and factually proven by the defendant." Unless the immunity, if any, that defendants may assert is absolute, the complaint against them may not be dismissed at this stage of the proceedings. *See Scheuer v. Rhodes, supra.*

Defendants base their immunity argument upon *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Defendants have cited no case to us, however, that applied an absolute immunity to officials in defendants' position. Rather, courts generally accord only a qualified immunity to local legislators and others similarly situated. *See Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board member entitled to a qualified immunity); *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975) (members of County Board of Supervisors entitled to qualified immunity); *Nelson v. Knox,* 256 F.2d 312 (6th Cir. 1958) (municipal legislators entitled to a qualified immunity); *Kinderhill Farm Breeding Associates v. Appel,* 450 F.Supp. 134 (S.D.N.Y. 1978) (Town Board members entitled to qualified immunity when acting in administrative or executive capacity.); *Adler v. Lynch,* 415 F.Supp. 705 (D.Neb.1976) (County Commissioners entitled to qualified immunity). We adopt the reasoning of Judge Robinson in *Adler v. Lynch, supra:*

> The defendants in the present case are elected members of a local governing body. While their duties include the enactment of local ordinances, [citation omitted], they derive their powers from the state legislature, and exercise a limited jurisdiction over matters specifically

committed to their discretion. [Citation omitted]. In the Court's judgment the nature of their duties is such as to be distinguishable from the type of judgment and discretion exercised by judges and legislators who enjoy absolute immunity under § 1983 because they must conceive public policy from the myriad policy options open to the sovereign, [citations omitted], and similar in significant respects to the type of discretion exercised by executive officials who have a more limited jurisdiction, and, must confine their discretion to matters which are more or less specifically defined within the state's public policy.

415 F.Supp. at 712. As discussed *supra,* the Commissioners are the "executive and administrative officers of the institution district" of their county. They are required to conform to the public policy of the state as expressed in its statutes and to adhere to regulations of the Department of Public Welfare. We hold that these aspects of their responsibilities prevent defendants from availing themselves of an absolute legislative immunity. They are entitled, at most, to a qualified immunity, the merits of which cannot be adjudicated on this motion to dismiss.

Because we find both of the grounds the moving defendants advance in support of their motion to dismiss to be without merit, defendants' motion is denied.

### ON MOTION FOR SUMMARY JUDGMENT

Plaintiff brought this civil rights action alleging deprivation, under color of state law, of rights secured to him by the United States Constitution, the Social Security Act, and regulations of the Pennsylvania Department of Public Welfare. Defendants William Schlacter, individually and in his official capacity as Executive Director of Montgomery County Child Welfare Service, A. Russell Parkhouse, Frank W. Jenkins, and Lawrence H. Curry, individually and in their official capacities as County Commissioners of Montgomery County, and Beverly Levine, Theodore Goldfleece, and Peggy Miro, individually and in their official capacities as caseworkers with the Montgomery County Child Welfare Service, have moved for summary judgment. The defendants' motion is based on judicial or quasi-judicial immunity and a qualified good faith immunity.

As the Supreme Court held in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the common law immunity of judges was not abrogated by 42 U.S.C. § 1983. Defendants in this case, however, do not hold positions which can be classified as "judicial" in any ordinary sense of the word. Nor are they court officials. *Cf. Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969) (prothonotary acting pursuant to court order is immune to suit under § 1983). Therefore, in order to prevail on this theory, defendants must establish that they were acting pursuant to a court directive. *Id.* at 460. Many courts have recognized that persons in non-judicial positions may be cloaked with immunity when performing ministerial functions under a court directive. *See, e. g., Waits v. McGowan,* 516 F.2d 203, 206–07 n. 6 (3d Cir. 1975) (collecting cases); *Dunn v. Gazzola,* 216 F.2d 709 (1st Cir. 1954).

Defendants state that they "received custody of the plaintiff, Allen Cameron, pursuant to a Court Order dated July 3, 1974 and subsequent Orders dated September 16, 1974, December 20, 1974 and February 20, 1975 and that therefore [they] are entitled to the same or similar immunities enjoyed by judicial and quasi-judicial officials." Defendants' motion for summary judgment at ¶ 1. If plaintiff's complaint were concerned solely with the fact that defendants maintained custody of him, defendants' position would be analogous to that of the sheriff and jailer in *Fowler v. Alexander,* 478 F.2d 694 (4th Cir. 1973). In that case the sheriff and jailer confined the plaintiff temporarily in conformity with a court order. The Fourth Circuit held that they were therefore absolutely immune from damages. In the instant action, however, plaintiff's complaint goes far beyond the

mere fact that he was maintained in custody by the defendants. Plaintiff's complaint is not restricted to the fact of his confinement, but alleges that he was confined without "adequate care, treatment, and services to enable him to return home to his mother," complaint ¶ 47, that he was prohibited from visiting with his mother, *id.* ¶ 49, that he was advised of neither his right to counsel nor his right to have his placement reviewed by a court, *id.* ¶ 50, that defendants failed to confine him in the least restrictive alternative, *id.* ¶ 51, and that defendants acted wantonly and negligently in disregard of his mental and physical health, *id.* ¶ 52.

These acts and omissions that plaintiff has alleged on the part of defendants are not the type of ministerial acts to which a quasi-judicial immunity has been held to attach. *See Waits v. McGowan, supra,* 516 F.2d at 206; *Lockhart v. Hoenstine, supra,* 411 F.2d at 460. They are, rather, more closely analogous to the types of issues that arise in connection with the management of a juvenile detention center. *See Santiago v. City of Philadelphia,* 435 F.Supp. 136, 146–47 (E.D.Pa.1977); *Thompson v. Montemuro,* 383 F.Supp. 1200, 1206–07 (E.D.Pa. 1974). In those cases, judicial or quasi-judicial immunity was denied for discretionary or administrative functions, even though the plaintiffs' custody was pursuant to a court order.

In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Supreme Court stated that

a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

*Id.* at 247–48, 94 S.Ct. at 1692. Because of the nature of defendants' duties, and the allegations of the complaint, we believe that the immunity of which defendants may avail themselves is a qualified good-faith immunity rather than an absolute judicial or quasi-judicial immunity. Their actions in administering the custody of plaintiff required them to exercise discretion unlike an official performing a purely ministerial function such as execution of a writ in connection with an eminent domain proceeding. *See Gigliotti v. Redevelopment Authority of New Castle,* 362 F.Supp. 764 (W.D.Pa.1973), *aff'd,* 492 F.2d 1238 (3d Cir. 1974). On this motion for summary judgment, any doubt as to the nature of defendants' duties must be resolved in favor of plaintiff. *Harold Friedman, Inc. v. Thorofare Markets Inc.,* 587 F.2d 127 at 131 (3d Cir. 1978). We therefore hold that summary judgment may not be granted in this case in favor of defendants based upon their theory of judicial or quasi-judicial immunity.

■ We therefore turn to defendants' argument that they are entitled to summary judgment based on a qualified good-faith immunity. Summary judgment on this basis may be granted if there was no established right that has allegedly been violated. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 54 L.Ed.2d 24 (1978). We agree with Judge Luongo, however, that when defendants seek summary judgment based on this aspect of immunity, they bear the burden of showing, by sustained argument, that they are entitled to judgment as a matter of law. *See Smith v. Robinson,* 456 F.Supp. 449, 456–57 (E.D.Pa.1978). We do not believe that defendants have met their burden in this respect. This failure is due, in part, to the fact that defendants have not subjected plaintiff's claims and theories to rigorous analysis. Instead, defendants have approached this case with broad-brushed theories, such as legislative immunity, judicial immunity, and good faith immunity, without discussing point by point plaintiff's theories, the legal authority in support thereof (or the lack of that authority), whether a claim has been stated by

a specific count, and whether a specific right was or was not clearly established. We believe that this type of careful examination of the issues in this case should occur before trial, but we do not believe that it has occurred to date. Defendants' motion based on good-faith immunity is a step in this direction, but, for the most part, it is a general argument that fails to meet the burden of a party moving for summary judgment. We therefore deny the motion based on good-faith immunity without prejudice. Defendants may, if they so desire, renew their motion in this respect. That motion should be accompanied by a memorandum of law that addresses seriatim the rights that plaintiff asserts, and whether or not those rights were established at the relevant times, so that the question whether defendants are entitled to summary judgment on that ground can be squarely confronted.